EDLESON, REZZO & HINDMAN

Louis "Chip" Edleson (Bar No. 097195)
ce@erhlawfirm.com
Joann F. Rezzo (Bar No. 185675)
joann@erhlawfirm.com
Jesse Hindman (Bar No. 222935)
jesse@erhlawfirm.com
402 West Broadway, Suite 1520
San Diego, CA  92101-8567
Tel: 619-230-8402

Attorneys for Plaintiff
Ronan Brown, Ph.D

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONAN BROWN, PH.D.,<br><br>Plaintiff,<br><br>v.<br><br>IQVIA RDS INC., and IQVIA HOLDINGS INC.,<br><br>Defendants. | CASE NO. '22CV1620 RSH KSC<br><br>COMPLAINT FOR:<br><br>1. VIOLATION OF THE CALIFORNIA LABOR CODE<br>2. CONVERSION<br>3. INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br>4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>5. NEGLIGENT MISREPRESENTATION<br>6. BREACH OF CONTRACT<br>7. DECLARATORY RELIEF<br><br>JURY DEMAND |

Complaint

## THE PARTIES AND VENUE

1. Plaintiff Ronan Brown, Ph.D. ("Plaintiff") resides in San Diego County, worked in San Diego County, and all the wrongful acts alleged occurred in San Diego County, California. He was employed by IQVIA RDS Inc., which is headquartered and incorporated in North Carolina, does business globally, and is a wholly owned subsidiary of IQVIA Holdings Inc., which is also headquartered in North Carolina, and incorporated in Delaware.

2. IQVIA RDS Inc. was controlled, dominated, and operated by IQVIA Holdings Inc. in its employment of Plaintiff and its related dealings with him. A unity of interest and ownership existed between IQVIA RDS Inc. and IQVIA Holdings Inc. such that any individuality and separateness between them ceased in connection with their conduct towards Plaintiff. Adherence to the fiction of any separate legal existence of these entities would permit abuse of corporate privilege and promote injustice. IQVIA RDS Inc. was the alter ego of IQVIA Holdings Inc., and vice versa, and each should be held jointly responsible for the same damages and liability. Plaintiff will collectively refer to these entities as "IQVIA" unless otherwise stated.

3. This Court has diversity jurisdiction over this matter pursuant to 28 United States Code §1332 because the amount in controversy exceeds the sum of $75,000 and there is diversity of citizenship between Plaintiff and Defendants.

4. Venue is proper in this judicial district pursuant to 29 United States Code §1132 because Plaintiff resides in this district and Defendants' wrongful conduct all took place in this district.

## FIRST CAUSE OF ACTION

### Violation of the California Labor Code

5. IQVIA is a healthcare services business. As stated on its website, IQVIA is a leading global provider of advanced analytics, technology solutions, and clinical research services to the life sciences industry. Among other things, IQVIA helps to speed drug development and ensure product quality and safety.

6. Plaintiff worked for IQVIA nearly 23 years. At the end of his employment, he was working as a Senior Vice President and Head of Patient Centric Solutions & Decentralized Trials (DCT). He received compensation and benefits, including awards of stock, commensurate with excellent performance.

7. Recently, on October 9, 2022, Plaintiff informed his immediate boss that he planned to transition out of IQVIA. On October 17, his boss cautioned him to reconsider his decision, stating that both the Company's head of HR and the Company's top inside employment lawyer expressed in strong terms that the Company would aggressively come after him to enforce a non-compete provision, including recoupment of shares of Company stock previously awarded as well as suing him to recover proceeds from shares sold in the prior 18 months. Plaintiff was the owner of the shares, which he earned and received as compensation, and he had already paid taxes on the shares and on proceeds from selling shares. Plaintiff was further warned that his long-standing service and friendship with many in the Company would make no difference because the Company wanted to preserve its reputation for very aggressively moving to block employee departures and associated competition. Plaintiff agreed to carefully reconsider his decision.

8. Soon after this warning, before Plaintiff submitted any formal resignation or otherwise took further steps to leave IQVIA, Plaintiff learned that the Company had frozen his E-trade account containing his Company shares. Then, on October 19, 2022, Plaintiff received a threatening letter from the Company's top inside employment lawyer stating that he had learned Plaintiff was considering leaving to work for a competitor, that IQVIA contended Plaintiff was prohibited from doing so by a non-compete provision in agreements he had signed, and reiterating the warning that IQVIA would aggressively take action in court "to recover amounts paid" which he estimated "to total in excess of $1.7 million." He further confirmed that the Company had frozen his stock trading account holding unsold shares previously awarded to Plaintiff. These shares had an added market value of $1.25 million.

Consequently, in addition to threatening expensive legal proceedings to block Plaintiff from accepting new employment, IQVIA threatened to take back $2.95 million of his previously paid compensation.

9. Previously, in June of 2022, IQVIA's HR department had assured Plaintiff, in writing, in response to his questions, that non-compete provisions did not apply to California employees. They referenced an addendum provided to all California employees along with their basic agreements.

10. Offended by these bullying tactics which showed no respect for Plaintiff's decades of loyal service, on October 20, 2022, Plaintiff submitted a formal resignation giving two weeks' notice. In addition, Plaintiff demanded that promptly following his termination of employment IQVIA return his shares of Company stock previously paid to him as compensation but frozen and thereby taken from him.

11. IQVIA has violated California's statutory protections of employees, including protections that are non-waivable by any agreement. Specifically, California Labor Code § 221 prohibits employers from paying compensation and then taking it back from an employee. The statute provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Shares awarded as compensation are wages under California's Labor Code sections 200, 201, and 202. California Labor Code § 219 makes these protections non-waivable. IQVIA has violated this non-waivable statutory duty by freezing and taking shares valued at $1.25 million. In addition, IQVIA has wrongfully threatened to take back another $1.7 million received by Plaintiff as proceeds from shares he was awarded and sold in the past 18 months.

12. As a direct result of IQVIA's willful breach of the California Labor Code, Plaintiff is entitled to payment of wages in the amount of $1.25 million, which is the value of the shares clawed back from him, with interest, and with a waiting-time penalty equal to 30 days' pay as provided by Labor Code § 203. In addition, Plaintiff has a right to attorney fees under California Labor Code § 218.5.

SECOND CAUSE OF ACTION

Conversion

13. Plaintiff incorporates here by reference paragraphs 1 through 11.

14. IQVIA has interfered with Plaintiff's ownership or right of possession of his shares in the Company awarded as compensation and placed in his E-Trade account. Specifically, IQVIA wrongfully froze the account, preventing Plaintiff from exercising control of the shares and preventing him from selling them at a value on October 19, 2022, of $1.25 million. IQVIA knowingly and intentionally froze the shares and took control of them, despite knowing that it had no right to do so based on a non-compete which was expressly inapplicable to California employees, which it previously confirmed as inapplicable, and that in any event was unenforceable under both California Labor Code § 221 and California Business and Professions Code § 16600.

15. In addition to causing the economic loss described, IQVIA's action has caused Plaintiff to suffer emotional distress in the form of worry, anxiety, anger, loss of sleep, and stress, in the same way as would any ordinary and reasonable person under similar circumstances. Accordingly, Plaintiff requests non-economic damages for "garden variety" emotional distress.

16. Defendants have acted towards Plaintiff with a conscious disregard of his rights and with malice, fraud, or oppression so as to justify an award of exemplary and punitive damages under California Civil Code section 3294 in a sum according to proof sufficient to punish them and to deter others from similar conduct.

THIRD CAUSE OF ACTION

Intentional Interference with Prospective Economic Advantage

17. Plaintiff incorporates here by reference paragraphs 1 through 10 and 14 through 16.

18. Defendants have purposefully interfered with Plaintiff's prospective economic advantage, deliberately attempting to scare him or his new employer or

5
Complaint

both from proceeding together in a working relationship and to disrupt their relationship, all by means of bullying tactics known to Defendants to be without reasonable legal basis. Defendants knew their non-compete provisions did not apply to Plaintiff as a California employee, and they knew that even if applicable their non-compete provisions were illegal and unenforceable under well-established California employment laws applicable to all California employees and non-waivable by private agreement.

19. Defendants' wrongful interference by means of threats to aggressively pursue him in court to take back millions of dollars and to impose legal fees and related burdens has caused worry and fear to Plaintiff, as it would to any ordinary person, and it has created disruption to any smooth transition to new employment. The extent of any consequential economic damages is currently unknown but will be proven at the time of trial, as will emotional distress damages.

## FOURTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress

20. Plaintiff incorporates here by reference paragraphs 1 through 10 and 14 through 16.

21. Defendants knew their action of freezing Plaintiff's stock trading account was extreme and outrageous, and without any proper legal basis, as was its threats of litigation to take back $1.7 million that Plaintiff had earned and to block him from his future employment opportunity, all based on non-compete provisions Defendants knew and admitted in writing did not apply to California employees, and Defendants knew that well-established California law made non-compete provisions illegal and unenforceable in any event, even if agreed to by private contract with an employee.

22. Defendants' extreme and outrageous conduct was carried out with the specific intention and expectation of causing worry, stress, fear, and other emotional distress to Plaintiff, and Plaintiff has suffered emotional distress which will be proven at the time of trial.

FIFTH CAUSE OF ACTION

Negligent Misrepresentation

23. Plaintiff incorporates here by reference paragraphs 1 through 10 and 15.

24. As previously alleged, in June of 2022, Plaintiff specifically inquired of IQVIA's HR specialists whether the Company's California employees were subject to any non-compete provision. He was assured, in writing, that non-compete provisions did not apply to California employees. They referenced an addendum provided to all California employees along with their basic agreements.

25. If for any reason the Court rejects Plaintiff's claims and contentions that IQVIA's non-compete provisions did not apply to him, or based on California's Labor Code § 221 prohibiting claw back of previously paid compensation, and/or based on California's Business and Professions Code § 16600 making non-compete provisions illegal and unenforceable, then Plaintiff alternatively requests damages for his loss of compensation based on IQVIA's negligent representation.

26. IQVIA acted unreasonably and negligently in making these representations if the Company believed its non-compete provisions applied to Plaintiff and other California employees, was enforceable, and that it intended to seek enforcement. Accordingly, IQVIA failed to use due care in its statements to Plaintiff.

27. Plaintiff reasonably relied on these assurances.

28. As a result of this negligence, Plaintiff will suffer a loss of $2.95 million if IQVIA is otherwise allowed to enforce its non-compete provisions which include terms allowing it to claw back $1.75 million in compensation previously paid, and lost shares with a value of $1.25 million.

SIXTH CAUSE OF ACTION

Breach of Contract

29. Plaintiff incorporates here by reference paragraphs 1 through 11.

30. Defendant contends Plaintiff signed a standard Company Confidentiality and Restrictive Covenants Agreement (CRCA). The CRCA contained provisions

prohibiting competition by employees for a period of 12 months after termination of employment. IQVIA's Stock Award Plan applicable to Plaintiff referenced the CRCA and included provisions allowing IQVIA to take back shares previously paid and sold or shares awarded, purchased, and placed in an E-Trade account but not yet sold, going back 18 months prior to termination.

31. The CRCA contained an addendum stating that the non-compete provisions did not apply to California employees "if mandated by applicable law."

32. California law mandates that non-compete provisions are illegal and unenforceable. This rule of law is very well-established, expressly stated in Business & Professions Code § 16600.

33. Plaintiff fully performed his obligations as an employee and under his Stock Award Plan until IQVIA prevented further performance.

34. IQVIA breached its Stock Award Plan with Plaintiff and violated the terms of its CRCA contract by taking back previously paid compensation in the form of Company stock awarded and purchased by Plaintiff and sitting in his E-Trade account with a market value of $1.25 million and has threatened to pursue claw back of proceeds previously received by Plaintiff in the 18-month period prior to his termination in the amount of $1.7 million. In doing so, IQVIA breached its promise that its non-compete provisions did not apply to California employees, and, in any event, ignored well-known California law invaliding non-compete provisions and holding them to be unconscionable and unenforceable even if agreed to by an employee.

35. As a result of IQVIA's wrongful conduct, Plaintiff has suffered monetary losses in an amount to be proven at trial.

36. The CRCA further provided that IQVIA should recover its reasonable attorneys' fees for prevailing in enforcement of the contract. Under California's reciprocal attorneys' fee statutory provision, Plaintiff is entitled to his reasonable attorneys' fees for enforcing his rights under the Agreement.

## SEVENTH CAUSE OF ACTION

### Declaratory Relief

37. Plaintiff incorporates paragraphs 1 through 11, 14, and 24 through 28.

38. An actual controversy now exists as to whether IQVIA has any right to enforce non-compete provisions against Plaintiff, its former California employee, and to claw back compensation previously paid to him. IQVIA contends it can enforce the provisions, and has already frozen Plaintiff's stock account, and threatens to pursue him to recover amounts he received during the 18-month period prior to his termination from the sale of other shares awarded to him and that he sold. Plaintiff denies that any non-compete applied to him, based on his status as a California resident employee, and further contends that the non-compete provisions, including the claw back provision, are illegal and unenforceable under well-established California law.

ACCORDINGLY, Plaintiff requests a judgment as follows:

1. For economic damages according to proof;
2. For non-economic damages according to proof;
3. For a statutory waiting time penalty;
4. For punitive damages according to proof;
5. For prejudgment interest;
6. For attorneys' fees;
7. For costs;
8. For a judicial determination declaring that IQVIA cannot enforce any non-compete provision, or related compensation claw back provisions, against Plaintiff.
9. For other relief as the court deems proper.

/////

/////

/////

# JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 20, 2022

                         EDLESON, REZZO & HINDMAN

                    By  s/ Louis "Chip" Edleson
                       Louis "Chip" Edleson
                       ce@erhlawfirm.com
                       Joann F. Rezzo
                       joann@erhlawfirm.com
                       Jesse Hindman
                       jesse@erhlawfirm.com
                       Attorneys for Plaintiff